# JOHN F. MAY

*vs.*

# MARY E. SCHOFIELD ET AL.

1. A Court of Equity will not aid anyone in an attempt to enforce a legal right, which he can only obtain by a violation of conscience.
2. A tax deed which was procured in pursuance of a fraudulent arrangement between the original owner and the tax deed holder to suffer the property to be sold for taxes in order to defeat the creditors of the owner, will be set aside as a cloud upon the title at the suit of a purchaser under a decree made in a creditor's suit.

In Equity No. 1816, Rules 6. Decided October 24th, 1867.

APPEAL from a decree on a bill filed to quiet title.

THE FACTS are stated in the opinion.

Mr. ROBT. J. BRENT, for complainant.

Messrs. NORRIS & COOMBS, for defendants.

Mr. JUSTICE WYLIE delivered the opinion of the Court:

The object of this suit is to obtain a decree to quiet the title of the complainant to lot No. 8 in square No. 456, in this city, of which he is now in possession. The title of complainant is shown to be as follows: The legal title to the lot was held by William Robinson in trust for Mrs. Alice C. Jennings, both citizens of the State of Virginia. They united in making a lease of the lot to John F. Callan, dated 2d November, 1840, for the life of Mrs. Jennings, at an annual rent of $200, and with privilege to Callan to · purchase the fee for the consideration of $3,000, the election to buy to be exercised, prior to the expiration of ninety days after the death of Mrs. Jennings, and Callan to pay all taxes.

Mrs. Jennings died in 1851, and Robinson the trustee had died before her. The $3,000 were not paid by Callan within the period limited by the lease for his purchase of the property, but the time was extended by agreement between him and those intrusted on the other side. A suit was brought in the Circuit Court of Norfolk County, Virginia, wherein Amanda C. Jennings was complainant and John F. Callan and others, were defendants, and a decree was passed on the 10th June, 1857, by which, amongst other things, it was adjudged, &c., that "the defendant John F. Callan, deposit in the Norfolk Savings Institution to the credit of this cause, within thirty days after he shall have been served with this decree the sum of $3,000, with interest from the first day of January, 1856, being the amount due by him under his contract with William Robinson and Alice C. Jennings, bearing date the 2d day of November, 1840, a copy of which is filed as an exhibit with the bill marked 'D.'"

In 1854 Callan had made a deed professing on its face to convey his interest under this contract to Michael P. Callan, one of his brothers. Accordingly, the three thousand dollars and the interest thereon, according to the decree, were ostensibly paid by Michael P. Callan, as assignee of John F. Callan, but no deed was ever made by the heirs of Mrs. Jennings, or of Robinson, her trustee, conveying the legal title to the property to either of the Callans, or any one else so far as the evidence in this case shows.

John F. Callan, at the date of the conveyance to his brother Michael, was much embarrassed in his circumstances, and at the suit of creditors commenced in 1855, this conveyance was found on trial to have been without consideration, and void for actual fraud. The cause was taken to the Supreme Court of the United States, and the decision below was there emphatically affirmed at the December Term, 1859. Under the decree in this case, the interest of John F. Callan in the lot in question was levied on, and at the sale was purchased by the complainant for

the sum of $23,100, and having complied with the terms of sale, by paying the full amount of the purchase money, he was put into possession under an order of the Court. This order was, also, taken to the Supreme Court by appeal, but the appeal was dismissed.

The heirs and representatives of Mrs. Jennings were made parties defendant along with John F. Callan in the suit by the creditors of the latter to set aside the fraudulent conveyance made by him to his brother Michael, and for a sale of the property. And the complainant having purchased the property at the marshal's sale, under the decree in this case, he now holds both the legal and the equitable titles to the property, and has a good right to come to this Court to have any cloud upon his title removed, if it be but a cloud. The cloud upon his title which he now seeks to have removed by decree of this Court, arises out of a tax sale made on the 11th day of April, 1853, for the unpaid taxes of 1850, 1851 and 1852, when the property was bought by Nicholas Callan, a brother of John F., for the sum of $255, the property at that time being worth $15,000. Two years afterwards, and when the period for obtaining his tax deed from the corporation was about to be fulfilled, Nicholas assigned his certificate of purchase to Mary E. Scofield, one of these defendants, for the professed consideration of $300, and on the 16th of April, 1855, she obtained the deed from the corporation.

Michael Callan, the other brother, to whom John F. had made his conveyance of the same property in 1854, and which had not been called in question by creditors, made no attempt to redem it from from the tax sale, although it was of the first importance to him do so if the tax sale had been anything else than another branch of the fraud contrived against the creditors of John F. Callan. Mary E. Schofield herself was also a member of the same family, the sister of John F. Callan's wife, and an inmate of his family at the time. In the mean time, and in fact up to 1860,

when he was removed from the possession under a writ of possession in favor of the complainant, issued in the suit of the creditors, John F. Callan remained in actual possession of the property, receiving the rents and profits and liable for the taxes:

The Norfolk decree shows that John F. Callan had paid the interest on the $3,000 due the heirs of Mrs. Jennings up to 1st January, 1856, one year nearly after Mrs. Schofield had obtained her tax deed from the corporation.

It is not denied that he remained in possession receiving rents and profits from the property and paying no rent either to his brother Michael or to Miss Schofield; nor does it appear that either of them ever claimed to have the possession or asked him for rent.

The taxes on the property for the year 1853 and subsequent till 1858, inclusive, were all paid by Miss Schofield, as she alleges in her answer, notwithstanding she was in the enjoyment of neither the rents nor the possession of the property, all of which she allowed to go to her brother-in-law, John F. Callan, without a complaint. All these circumstances taken together in our view, amount to very strong evidence, that the sale for taxes, the purchase by Nicholas Callan, the transfer of the certificate of purchase to Miss Schofield and the payment of the taxes by her subsequently, were continued (like the deed to Michael which the Courts have already pronounced to be fraudulent) by these brothers and this sister for the purpose of enabling John F. Callan to defraud his creditors, if not also the heirs of Mrs. Jennings, and no account having been given on the subject by the Callans or by these defendants we think it is reasonable to presume that whatever money was required to carry out the scheme was supplied by John F. Callan, who was allowed by them all to manage and control the property as his own, and to receive the rents and profits without ever having been called to account, so far as appears in the case before us.

We think, therefore, that the tax sale to Nicholas Callan in 1853, and the subsequent assessment of his certificate to Miss Schofield, and the deed made to her from the corporation, were all acts in trust substantially for John F. Callan.

At best tax sales are apt to meet an unfriendly reception in a court of equity. There are very few of them which an honest man can insist upon. Through mistake, or accident, or the failure of the letter, or the infidelity of a tenant, or an agent, property worth many thousands may be sold at tax sale for less than a score of dollars, and the owner be kept in ignorance of the fact until the deed has been made and the property lost. How dare the purchaser of such property show his face in a court of equity, asking its assistance to uphold his title. His case belongs to a court of law, where he must go, or nowhere, for what he calls his rights. We do not say that a court of equity will in no possible case assist a tax purchaser, for we cannot foresee all things which are to happen. But we do say that a court of equity will never either aid or countenance any one in attempting to enforce a legal right, which he can only obtain by a violation of conscience.

But on the other hand a court of conscience moves with alacrity and exerts all its powers when called to assist and protect the cause of fairness and integrity, in their contest with secret covin and fraudulent attempts to deprive them of their rights. And there is no class of cases to be found in the Courts more suspicions and ill-favored, than those, like the present in which different members of the same family appear to have leagued together to protect by means of many divers and shifting contrivances to so entangle their property as to defeat the just claims of creditors of *bona fide* purchasers, especially when one of these contrivances is a tax sale, for less than a fiftieth part of the value of the property.

But there are two other parties defendant in this suit whose cases has not yet been considered. David L. Peugh and Samuel A. Peugh, his brother. The latter is not a sub-

stantial party in interest, but was only a friend of the Callans and the confidential adviser of Miss Schofield from the beginning, and of his brother David also who under his counsel, as he says, purchased the property in question from Miss Schofield in 1862. His answer favors us with his opinion in support of Miss Schofield's title, as also the opinion of at least one other gentleman of high standing at this bar, who is not named however, to the same purport. Although we have considered this opinion with sincere respect, it is our misfortune, perhaps, that we cannot bring our minds to the same conclusion.

David L. Peugh says he is a *bona fide* purchaser of the property for valuable consideration, without notice of any latent defect in Miss Schofield's tax title, and that she made her deed to him conveying the same in consideration of the sum of $7,000.

Let us see how this is: the deed itself is before us. Its date is 19th June, 1862. It was not recorded until the 3d of December following. That, however, is not very important, as the six months had not quite expired. On its face the deed acknowledges the payment in hand of the whole amount of the purchase money. But Mr. Peugh's answer says that "after some negotiation and delay, this respondent finally consented ta purchase the interest of said Mary for the sum of $7,000, payable at a future day with interest; that a conveyance was prepared and executed by said Mary for the premises, and he, this respondent, executed and delivered his promissory note for the sum of $7,000, and that said conveyance bearing date the 19th day of June, 1862, and duly recorded, &c., fully and truly exhibits the whole transaction, so far as this respondent is concerned."

Now the answer of Mr. Peugh does not furnish us with either a copy of this promissory note, nor with its description. It does not state whether the note was a negotiable note, or one not negotiable; whether it was payable absolutely or on the happening of a contingency. It does not

say whether it was payable in one year or two years after date, or at the Greek calends.

We are bound to presume, therefore, that this note was not negotiable, and that its payment can never be enforced unless Mr. Peugh should succeed in establishing a title to this property under his conveyance from Miss Schofield.

Nor does the deed to Peugh from Miss Schofield contain any warranty of title on her part.

We thus see that if Peugh's title should turn out to be worthless, there would be a failure of consideration for the note, and the deed and note would both become worthless together as would be quite fitting in such event.

Mr. Peugh then was not, as he seems to think, a purchaser in this case *bona fide* and for valuable consideration without notice and all the trouble taken by him and Miss Schofield, in the matter has not put them, or either of them, one step forward.

The case before us must be considered by us and decided precisely as though the deed to Peugh had never been made.

There are a number of other points in the case of more or less importance, but we prefer that our decision should rest on the broad grounds where we have placed it. The discussion of these questions, besides, would prolong the opinion to an unreasonable length, and consist principally of citations of authorities and extracts from decisions, on questions which it is not in our judgment necessary we should decide.

We have had some trouble in considering this cause to keep out of view the evidence contained in the case of the creditors against Callan and others, as the parties in this were different, as well as the objects of the suit. For one purpose, however, the record in that case was evidence in this, for the purpose, namely, of tracing the complainant's title, as purchaser under the decree in that case. But none of the evidence taken in that case for the purpose of estab-

*31*

lishing fraud on the part of the two Callan's John F. and Michael, has been used by us in our deliberations upon the present case.

The counsel of the complainant in consequence of having all that testimony connected with the record and that record given in evidence in this case for the lawful purpose indicated may have been misled into the belief that what was evidence there would be considered as evidence also in this; and we may thus account perhaps for the seeming scantiness of the testimony which has been taken in this cause.

Several questions, also, have been made in this case, which depend on the evidence in that, and for this as well as the other reason already stated, have not been considered by us here.

We think the tax title now held by David L. Peugh against the lot in controversy, was in the beginning one of the concoctions gotten up at the instance and with the means of John F. Callan, for the purpose on his part to defraud his creditors, and that he was knowingly aided in the attempt both by his brother Nicholas and his sister-in-law Miss Schofield, and that it would amount to an insult to justice to uphold this contrivance, by taking away from the complainant a property for which he has honestly paid the sum of $23,100, which has all been applied to the benefit of John F. Callan in the payment of his debts, and handing it over to the parties claiming under the tax sale, made for less than two per cent. of its value at the time and glaring with all the wonted indicia of fraud. Complainant has shown his right to have this cloud removed from his title, and a decree will be entered up accordingly.